IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEICO CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 17-315-E |
| | ) | |
| ARACELIA ALICEA, Administratrix | ) | |
| of the Estate of JORGE TOLEDO, | ) | |
| Deceased, TINA PIERCE, and | ) | |
| LILIANA TOLEDO, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

BLOCH, District J.

Presently before the Court is Plaintiff/Counterclaim Defendant GEICO Casualty Company's Motion for Summary Judgment (Doc. No. 26) and Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment (Doc. No. 23). For the reasons set forth herein, each motion will be granted in part and denied in part. Specifically, Plaintiff/Counterclaim Defendant's motion shall be granted to the extent that it seeks a declaration that it has no further obligations for the November 11, 2016 accident at issue as to Aracelia Alicea and Tina Pierce and denied to the extent that it seeks such a declaration as to Liliana Toledo. Conversely, Defendants/Counterclaim Plaintiffs' motion shall be granted to the extent that it seeks a declaration that Liliana Toledo is entitled to recover under the relevant stacked underinsured motorists policy and denied in all other respects.

**I. CASE BACKGROUND**

This is an action brought by GEICO Casualty Company ("Plaintiff" or "GEICO") for declaratory judgment pursuant to 28 U.S.C. § 2201. Plaintiff asserts that this Court has

1

jurisdiction over the matter pursuant to 28 U.S.C. § 1332 since the amount in controversy is in excess of $75,000.00, and there is complete diversity of citizenship between the parties. As set forth in the complaint, Plaintiff seeks for the Court to enter an order granting its declaratory judgment action and declaring that it has no further obligation to provide Underinsured Motorists ("UIM") benefits to the three named defendants for the events relevant to this case. Defendants/Counterclaim Plaintiffs ("Defendants") filed an answer and counterclaim seeking a declaratory judgment that Plaintiff must provide stacked UIM coverage of $400,000.00 either to Defendant Aracelia Alicea, as Administratrix to the Estate of Jorge Toledo or individually, or to Defendant Liliana Toledo, and stacked UIM coverage of $400,000.00 to Defendant Tina Pierce.

## II. FACTUAL BACKGROUND

This case stems from what all parties agree was a tragic automobile accident that occurred on November 11, 2016 in the City of Erie, Pennsylvania. On that date, Jorge Toledo and Tina Pierce were travelling in a 1999 Chevrolet Blazer owned by Aracelia Alicea, who is Mr. Toledo's mother, and her husband, Edwin A. Perez. The Blazer was struck by a vehicle operated by Kevin Deck, causing Ms. Pierce and Mr. Toledo to be ejected from their vehicle. Ms. Pierce, who was the driver of the Blazer, suffered serious injuries ultimately resulting in the amputation of her left leg. Mr. Toledo died from his injuries. The parties agree that Mr. Deck, who was drunk at the time, was solely responsible for the accident.

The Blazer was insured by GEICO under Policy No. 4183-33-15-54 through Ms. Alicea and Mr. Perez ("the Policy"). It was one of four vehicles insured by Ms. Alicea and Mr. Perez through GEICO under the Policy. Mr. Deck was also insured by GEICO under a policy providing liability insurance of $15,000.00 per person and $30,000.00 per accident. GEICO tendered the policy limits of Mr. Deck's coverage to the Estate of Mr. Toledo and Ms. Pierce.

The Estate and Ms. Pierce also made claims to GEICO under Section IV of the Policy, pertaining to uninsured and underinsured motorists coverage. The parties have no dispute that Mr. Deck was underinsured for purposes Section IV of the Policy, and GEICO has, in fact, paid $100,000.00 each to the Estate of Mr. Toledo and to Ms. Pierce, which was the per person limit of the relevant UIM coverage pursuant to the Declarations Page of the Policy. (Appendix to Defendants' Concise Statement of Material Facts in Support of Motion for Summary Judgment, Ex. A (Doc No. 24-1) at 5).

However, Ms. Alicea and Mr. Perez's Policy also contained an amendment providing for "stacked" UIM coverage – *i.e.*, the per person UIM limits for the four insured vehicles could be combined, resulting in a per person limit of $400,000.00 and a per accident limit of $1,200,000.00 – that applied to Ms. Alicea and Mr. Perez personally and to any household member ("Stacked UIM Policy"). Specifically, the Stacked UIM Policy provided that GEICO

> will pay damages for **bodily injury** caused by an accident which the **insured** is legally entitled to recover from the owner or operator on an **underinsured motor vehicle** arising out of the ownership, maintenance or use of that motor vehicle.

(Doc. No.24-1 at 39) (emphasis in original). However, not all "insureds," as defined by the Policy and the Stacked UIM Policy, were eligible for stacked coverage. In regard to the limit of GEICO's liability under the Stacked UIM Policy, the language stated:

> For **you** or a **household member**, the most we will pay for all damages including those for care or loss of services due to **bodily injury** to one person in any one accident is the sum of the "each person" limits for Underinsured Motorists Coverage shown in the declarations applicable to each vehicle.
>
> Subject to the "each person" limit above, for **you** or **your household members**, the most we will pay for all damages including those for care or loss of services due to **bodily injury** to two or more persons in any one accident is the sum of the "each

3

> accident" limit shown in the declarations applicable to each
> vehicle.

(Id. at 40) (emphasis in original). The liability limit for all other insureds was subject to the limits shown in the Declarations page of the Policy for "each person" and "each accident" applicable to the vehicle that the insured was occupying at the time of the accident. (Id.). In other words, UIM coverage could only be stacked for the policy holders themselves and their household members. Pursuant to the Definitions section of the Stacked UIM Policy:

> *Household Member* means a person residing in *your* household who is:
> (a) *Your* spouse; or
> (b) A *relative*; or
> (c) A minor in *your* custody or the custody of a *relative*.

(Id. at 39) (emphasis in original).

At the time of the accident Ms. Alicea and Mr. Perez resided together at their home at 724 East 14th Street, Erie, PA, where they had lived since 1995. Ms. Alicea's son, Mr. Toledo, and his long-time partner, Ms. Pierce, lived with their daughter, Liliana Toledo, in the apartment they rented at 734 East 14th Street, Erie, PA, where they had lived for approximately a year prior to the accident. Mr. Toledo and Ms. Pierce's apartment was on the same street and one building over from the house of Ms. Alicea and Mr. Perez, and, indeed, they moved to the apartment to be closer to Mr. Toledo's parents. The two families interacted often, and , as will be further discussed herein, Liliana in particular spent a significant amount of time both with her parents and with her grandparents. Liliana was, in fact, at 724 East 14th Street with Ms. Alicea and Mr. Perez at the time of the accident.

While, as discussed, GEICO paid $100,000.00 to the Estate of Mr. Toledo and $100,000.00 to Ms. Pierce under the Policy's UIM coverage, the parties have disputed whether

4

Plaintiff is liable for payments under the Stacked UIM Policy in addition to those payments already made. Defendants have made claims to GEICIO arguing that two payments under the Stacked UIM Policy are warranted, one for the bodily injuries (and ultimately death) of Mr. Toledo and one for the bodily injuries sustained by Ms. Pierce. The former, they assert, is payable to one of the following: Ms. Alicea, either as Administratrix to the Estate of Jorge Toledo or individually, or Liliana Toledo. The second, they argue, is payable to Ms. Pierce. Plaintiff has denied these claims, contending that no further payments are warranted under the Stacked UIM Policy. The primary point of contention has been the application of the term "household member." Defendants have maintained that Ms. Alicea and/or Liliana Toledo, as well as Ms. Pierce, are household members entitled to stacked coverage under the Stacked UIM Policy. Plaintiff has disagreed. Accordingly, the parties, as discussed above, have each sought a declaratory judgment affirming their respective positions and have filed cross-motions for summary judgment to that end. The determination as to which of the Defendants, if any, qualify as household members under the Stacked UIM Policy is therefore the focus of the Court's analysis here, and the additional facts relevant to that determination are further discussed below.

### III. APPLICABLE LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. See Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Anderson, 477 U.S. at 247-48). Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. See Anderson, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. See Boyle, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. See Schulz v. Celotex Corp., 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. See Celotex, 477 U.S. at 324.

IV. **DISCUSSION**

As noted above, the fundamental issue in this matter is which of the Defendants, if any, qualify as household members under the Stacked UIM Policy, thereby entitling them to a higher liability limit for UIM coverage for the accident. Plaintiff seeks a declaratory judgment that

none of the Defendants do. Defendants seek a declaratory judgment that Ms. Alicea and/or Liliana Toledo do. Defendants do not, in their summary judgment motion, seek a declaration as to Ms. Pierce, stating that there are issues of material fact as to whether or not she was a household member.[1] The Court finds that there are no disputed material facts as to any of the Defendants, and that the record clearly demonstrates that Liliana Toledo was a household member and that Ms. Pierce was not.[2]

As the parties note, because the case is before this Court based on diversity jurisdiction, under the Erie Doctrine, the Court must apply the substantive law of the forum state, Pennsylvania, in resolving this dispute. See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938); Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993).[3] Under Pennsylvania law, courts, in interpreting insurance contracts, are "to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (citing 401 Fourth Street, Inc. v. Investors Ins. Group, 879 A.2d 166, 171 (Pa. 2005)). When the policy language is "clear and unambiguous," the court simply gives

---

[1] Although Ms. Pierce has not moved for summary judgment on her own behalf, Plaintiff has moved for summary judgment on its claim against her and her counterclaim against it. Although, as discussed herein, the Court finds that there are no genuine disputes as to any material facts relevant to this issue, it will, to the extent its analysis calls for it, construe the record in the light most favorable to Ms. Pierce.

[2] Because the Court finds that Liliana Toledo is entitled to recover damages under the Stacked UIM Policy for the injuries sustained by her father, Mr. Toledo, it need not determine whether Mr. Toledo's mother, Ms. Alicea, would also be entitled to do so. As Defendants acknowledge, only one Defendant can collect under the Stacked UIM Policy for Mr. Toledo's injuries.

[3] The parties do not address the choice of law issue, but it is clear that, under Pennsylvania choice of law rules, given that Defendants reside in Pennsylvania, the accident occurred in the Commonwealth, and all relevant policies were executed in the Commonwealth, that Pennsylvania law applies to the contract dispute here. See Travelers Personal Ins. Co. v. Estate of Parzych, 675 F. Supp. 2d 505, 508 (E.D. Pa. 2009) (citing Pollard v. Autotote, Ltd., 852 F.2d 67, 70 n.3 (3d Cir. 1988)).

effect to that language. Id. If the language is ambiguous, "'the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.'" Id. (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)).

The starting point for applying this law here is by looking at the relevant language of the Stacked UIM Policy. As noted above, that policy provided:

> Under this coverage, we will pay damages for ***bodily injury*** caused by an accident which the ***insured*** is legally entitled to recover from the owner or operator on an ***underinsured motor vehicle*** arising out of the ownership, maintenance or use of that motor vehicle.

(Doc. No. 24-1 at 39) (emphasis in original). This language is, for all relevant purposes, the same as that contained in Section IV of the original Policy. As Defendants accurately point out, the language demonstrates that there are five criteria for coverage under this provision: (1) some bodily injury (2) that was caused by an accident, (3) which an insured, as defined by the policies, (4) is legally entitled to recover (5) from the owner or operator of an underinsured motor vehicle.

There appears to be no dispute that both Liliana Toledo and Ms. Pierce satisfy these criteria. Criteria (1), (2), and (5) are clearly met. As to (3) and (4), the Stacked UIM Policy provided that insured meant:

> (a) ***You;***
> (b) A ***household member***;
> (c) Any other person while ***occupying*** an ***owned auto***;
> (d) Any person who is entitled to recover damages because of ***bodily injury*** sustained by an insured under (a), (b), or (c) above.

(Id. at 39) (emphasis in original). Ms. Pierce, who was the driver of the Blazer during the accident, is unquestionably an insured, as defined by the Stacked UIM Policy. Indeed, GEICO has already paid the UIM limit under the similar language of the Policy to Ms. Pierce. Liliana

Toledo is the sole issue of Mr. Toledo, who died intestate, and who, as an occupant of the vehicle at the time of the accident, himself qualifies as an insured. There is no question, and the parties do not dispute, that Liliana is a person entitled to recover for the bodily injuries of her late father under Pennsylvania's wrongful death statute, 42 Pa.C.S. § 8301. Again, GEICO has already paid the UIM limit under the Policy to Liliana's father's estate.[4] Indeed, GEICO states that the issue is not whether Liliana Toledo and/or Ms. Pierce are insureds entitled to recover benefits, but whether they are household members for purposes of stacked UIM coverage.

Accordingly, the Court must next consider the provision establishing the limit of GEICO's liability under the Stacked UIM Policy. As discussed, this language provided:

> For *you* or a *household member*, the most we will pay for all damages including those for care or loss of services due to *bodily injury* to one person in any one accident is the sum of the "each person" limits for Underinsured Motorists Coverage shown in the declarations applicable to each vehicle.

(Doc. No. 24-1 at 40) (emphasis in original). "You" refers to the policy holders, Ms. Alicea and Mr. Perez, and is inapplicable to the Court's analysis here. The issue is whether Liliana Toledo and/or Ms. Pierce was a household member, defined in the Stacked UIM Policy as a person residing in the Alicea/Perez household who was Ms. Alicea's or Mr. Perez's spouse, a relative of Ms. Alicea or Mr. Perez, or a minor in their custody or in that of a relative. (Id. at 39). Liliana, Ms. Alicea's biological granddaughter, clearly qualifies as a relative. The Court will assume that Ms. Pierce, as Ms. Alicea's daughter-in-law, is also a relative under the Stacked UIM Policy. The remaining question is whether either were *residing in the household* of Ms. Alicea and Mr. Perez.

---

[4] As discussed below, the Court finds that Liliana is a household member, which would qualify her as an insured in any event.

9

The Stacked UIM Policy does not define the term "reside" or "residing."  However, the term has a well-understood meaning under Pennsylvania law regarding insurance contracts.  As the parties agree, Pennsylvania courts have adopted the classical definition of the term "residence" as well as that of the related term "domicile":

> Domicile being that place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning.
>
> Residence being a factual place of abode.  Living in a particular place, requiring only physical presence.
>
> Though the two words may be used in the same context, the word resident as used in the policy, without additional words of refinement, *i.e.*, permanent, legal, etc., would carry the more transitory meaning.

Krager v. Foremost Ins. Co., 450 A.2d 736, 737-38 (Pa. Super. 1982).  Pennsylvania courts have applied these definitions to insurance policy language very similar to that in this case.  See Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co., 545 A.2d 343, 346 (Pa. Super. 1988).  Residence, being more transitory, is clearly not synonymous with domicile.  The Court finds this distinction to be crucial as it applies here.

One of Plaintiff's arguments is that Liliana Toledo and Ms. Pierce resided at the apartment at 734 East 14th Street, and that they could not have also resided at 724 East 14th Street.  They assert, essentially, that a person cannot have more than one residence, arguing that no Pennsylvania appellate court has held that a person can reside at more than one place for purposes of insurance coverage.  While acknowledging that the Pennsylvania Superior Court, in Amica, did not disagree with the concept of a person having more than one residence, Plaintiff argues that the court did not, in fact, hold that this was the case.  It also argues that the Courts of Common Pleas decisions discussed by Amica are distinguishable from the instant case.

10

However, a look at these cases, in light of the classical meanings of the terms residence and domicile, tells a different story.

Even if Plaintiff is correct that the Superior Court's discussion of multiple residences in Amica was merely dicta, the fact is that courts, both in Pennsylvania and within the Third Circuit interpreting Pennsylvania law, have agreed or at least assumed that a person is not limited to one residence. See, e.g., Erie Ins. Co./Erie Ins. Exchange v. Flood, 649 A.2d 736, 738-39 (Pa. Comwlth. 1994); Miller v. U.S.F. & G., 28 Pa. D. & C. 3d 389 (1983); Nationwide Ins. Co. v. Frazier, 39 Pa. D. & C. 3d 254, 263 (1986); Toplin v. Pennland Ins. Co., No. 3141, 1997 WL 1433783 (Pa. Ct. C.P. Nov. 7, 1997); Quincy Mut. Fire Ins. Co. v. Clyman, 910 F. Supp. 230, 232 (E.D. Pa. 1996); Ionata v. Allstate Ins. Co., Civ. No. 15-6561, 2016 WL 4538756, at *3 (E.D. Pa. Aug. 30, 2016); Allstate Ins. Co. v. Popyack, Civ. No. 15-1765, 2015 WL 9260050, at *4 (E.D. Pa. Dec. 17, 2015). If this proposition is not conclusively established under Pennsylvania law, it is clearly what jurists in the Commonwealth believe the law to be. Indeed, no Pennsylvania appellate court has ever suggested that one is limited to one residence.[5] It is certainly possible that one can have only one domicile, which as a person's principal establishment, implies a certain unique status. Residence though has always been regarded as something more fluid and less permanent than a domicile, and there is no reason to believe one cannot have a sufficient physical presence at more than one place to establish a residence. Indeed, as the Mercer County Court of Common Pleas recognized 33 years ago, "[t]he concept of children necessarily belonging to but one household has long since passed in our society and our law." Frazier, 39 Pa. D. & C. 3d at 265.

---

[5] Lower state court decisions, while not controlling, are to be afforded significant weight in the absence of any indication that the highest state court would rule otherwise. See Nationwide Mut. Ins. Co. v. Budd-Baldwin, 947 F.2d 1098, 1101 n.6 (3d Cir. 1991) (citing Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273-74 (3d Cir. 1985)).

11

Therefore, although there is probably no question that Liliana Toledo and Ms. Pierce resided with Mr. Toledo at 734 East 14th Street, it is possible under Pennsylvania law for them to have also resided at the Alicea/Perez household. Defendants say that this was, in fact, the case, while GEICO disagrees. There is obviously no case interpreting Pennsylvania law directly on point with the precise facts of this case, but a general review of case law applying the concept of "residing" to similar fact patterns produces a number of factors for the Court to consider in determining whether Liliana and/or Ms. Pierce resided at 724 East 14th Street.

As discussed above, the classical definition of a residence used by Pennsylvania courts is a factual place of abode, entailing living in a particular place, requiring only physical presence. See Krager, 450 A.2d at 737-38. Because of the focus on factual physical presence, courts have held that intention is not a relevant consideration. See Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 965 (Pa. Super. 2007) (citing Amica, 545 A.2d at 348); Nationwide Mut. Ins. Co. v. Budd-Baldwin, 947 F.2d 1098, 1102 (3d Cir. 1991). The issue is not whether a person has lived somewhere or whether that person intends to live there again. Rather it is whether they are residing in a place as a matter of material fact. See Amica, 545 A.2d at 349. Residence requires, "'at the minimum, some measure of permanency or habitual repetition.'" Manross, 939 A.2d at 965 (quoting Erie Ins. Exchange v. Weryha, 931 A.2d 739, 744 (Pa. Super. 2007)). See also St. Paul Fire and Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431-32 (3d Cir. 1991) (living with or residing with someone "contemplates, at a minimum, some consistent, personal contact with that person's home.").

The key factor courts consider in making this determination is whether contact with the dwelling in question is regular or sporadic. As noted, there must be a sense of permanency or habitual repetition. Persons who have been found to reside at a certain place have demonstrated

an "established pattern of spending significant time" there, Flood, 649 A.2d at 739, and that they maintained their contacts as part of a regular pattern. See Frazier, 39 Pa. D. & C. 3d at 263. On the other hand, persons with only occasional or sporadic contact with a residence are generally not found to reside there, regardless of whatever indicia of residency they can show. See Manross, 939 A.2d at 968; Lewis, 935 F.2d at 1432. There is no specific amount of time a person must stay at a place to make it his or her residence, but courts have commonly found that those who sleep at a place no more than once a week or so are not residents of that place. See Amica, 545 A.2d at 349; Parzych, 675 F. Supp. 2d at 507-11; Popyack, 2015 WL 9260050, at *4.

This Court's focus, therefore, is on the pattern of contact that Liliana Toledo and Ms. Pierce had with Ms. Alicea and Mr. Perez's home. Certain factual considerations are relevant in making this decision, but none are generally dispositive. For instance, whether the person has a personal bedroom at the place is a relevant consideration, see Flood, 649 A.2d at 739; Frazier, 39 Pa. D. & C. 3d at 263; Budd-Baldwin, 947 F.2d at 1103-04, but that fact alone does not establish residency. See Parzych, 675 F. Supp. 2d at 509; Lewis, 935 F.2d at 1430-33. Likewise, the Court must consider whether and to what extent Liliana and Ms. Pierce kept clothing and other personal items at 724 East 14th Street, see Frazier, 39 Pa. D. & C. 3d at 263, but it is not enough merely to store personal items at a place to reside there. See Amica, 545 A.2d at 349; Lewis, 935 F.2d at 1433. Moreover, using an address on documents such as driver's licenses, tax returns, and other records is not dispositive. See Parzych, 675 F. Supp. 2d at 509; Lewis, 935 F.2d at 1430-33.

Applying these concepts here leads the Court to two clear conclusions – Liliana Toledo was a resident of the Alicea/Perez household and Ms. Pierce was not. The record makes it clear

13

that Liliana's numerous contacts with that residence were far more than occasional or sporadic. Liliana had her own permanent bedroom at her grandparents' home at 724 East 14th Street. She kept sufficient personal items and clothes there that she did not generally need to bring those things with her when going there. Most importantly, though, she actually used the bedroom designated for her on a consistent, and almost a constant basis. Ms. Alicea and Mr. Perez's house was not merely situated to allow for Liliana to stay there from time to time as needed; it was set up with the understanding that she would be a fixture there almost every day. It is not disputed that Liliana generally slept at her grandparents' house on school nights, that her grandparents made sure she went to and from school, that she generally ate meals – often all of them – there, and that she had access to all parts of the house. (Examination under Oath of Tina Pierce (Doc. No. 26-4) at 7, 9-11; Examination under Oath of Aracelia Alicea (Doc. No. 26-5) at 5; Examination under Oath of Edwin Perez (Doc. No. 26-6) at 4-5; Affidavit of Aracelia Alicea (Doc. No. 25)). Her situation with her grandparents epitomizes the type of established pattern and habitual repetition that is the hallmark of residency.

Plaintiff dismisses all this as "overnight child care," arguing that Liliana merely stayed at the Alicea/Perez home because her parents worked nights. The Court emphasizes, though, that the intention of the families is not really what matters; what matters is that Liliana did, in fact, spend a substantial part of her day, most days, at her grandparents' home. Regardless, the care provided by Ms. Alicea and Mr. Perez was that of family members, not baby-sitters. Liliana was treated like family, which is what she was. Plaintiff also argues that Liliana's school records reflected her address as being that of her parents, not her grandparents. However, as the case law makes clear, this is not a determinative factor. Indeed, as Defendants point out, "addresses used

14

on documents for a young child is hardly strong evidence of where the child is actually spending her time." (Doc. No. 33 at 6).

It is interesting to contrast Liliana's situation with the one in Lebanon Mut. Ins. Co. v. Lopresti, No. 2254-MDA-2012, 2013 WL 11256828 (Pa. Super. Aug. 13, 2013). There, the court found that the defendant did not reside at his sister's home, despite his visits being more than sporadic. The record in that case showed that the defendant slept at his sister's house every night, but on a couch, rather than in a bed in his own bedroom. It further showed that he spent no waking hours there, stored no possessions there, and did not generally eat his meals there. Liliana Toledo, in contrast, slept in her own bed, in her own room, surrounded by her own personal effects. While she went to school during the day, she still spent a substantial amount of time with her grandparents and ate meals with them regularly. Indeed, she spent considerably more time there, on a regular basis, than she did at her parents' apartment. This was done with the understanding that Ms. Alicea and Mr. Perez would be taking their granddaughter into their home as a regular member of their household. Her case is in stark contrast to those in which courts have found the person at issue to be a non-resident.

However, the very factors that compel a finding that Liliana Toledo was a resident of 724 East 14th Street also compel a finding that Liliana's mother, Ms. Pierce, was not. Ms. Pierce had no designated room at Ms. Alicea and Mr. Perez's house, nor is there any evidence that she kept anything more than some clothing there, which was stored in Liliana's room. While it is clear that she stayed over night there occasionally, even construing the facts in Defendants' favor, at best she did so a few times per month. She clearly held herself out as living at the apartment at 734 East 14th Street; that address was used for her driver's license and taxes. She and Ms. Toledo purchased their own groceries and, unlike Liliana, Ms. Pierce did not regularly eat with

the Alicea/Perez family. (Doc. Nos. 26-4 at 10-11, 26-5 at 6, 26-6 at 6). In short, while Liliana was a daily part of Ms. Alicea and Mr. Perez's home, Ms. Pierce was a visitor, albeit a frequent one. Ms. Pierce's situation is very similar to those in which people with some contact, but sporadic, inconsistent contact, were found not to reside at the place in question. The same is true of Ms. Pierce here.

## V. CONCLUSION

Therefore, for the reasons set forth herein, the Court finds that no genuine issues of material fact exist and that each parties' summary judgment motion shall be granted in part and denied in part as set forth above. In summary, the Court finds that Liliana Toledo is entitled to recover under the relevant provisions of the Stacked UIM Policy and that the other Defendants are not. An appropriate Order will be issued.[6]

    s/Alan N. Bloch_____
Alan N. Bloch
United States District Judge

Date: September 26, 2019

ecf: Counsel of Record

---

[6] The Court notes that to the extent it has been asked to determine the actual amount of damages to which Liliana Toledo is entitled, it has not been provided with sufficient information on which to base such a finding. The Court's declaration, therefore, will be that Liliana Toledo is entitled to payments under the Stacked UIM Policy, not that she is entitled to any certain amount. However, given the catastrophic nature of the injuries in this case, it seems all but certain that the damages will reach the $400,000.00 per person limit.

16